UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:08-CV-1-F

| HERNDON HUNT OUTLAW RIDDLE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| AUTO-OWNERS INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

This matter is before the court on the Defendant's Motion for Summary Judgment [DE-16]. Plaintiff has responded, and this motion is now ripe for disposition.

## I. PROCEDURAL HISTORY

Plaintiff Herndon Hunt Outlaw Riddle ("Herndon") initiated this action by filing a Complaint in the General Court of Justice, Superior Court Division, Dare County, North Carolina on November 27, 2007. Herndon alleges claims for breach of contract and unfair deceptive trade practices arising out of Defendant Auto-Owners Insurance Company's ("Auto-Owners") denial of Herndon's claim for insurance proceeds under a homeowners insurance policy. Auto-Owners filed a Notice of Removal in this court on January 2, 2008. On February 6, 2008, Auto-Owners filed its Answer, and asserted a counterclaim for a declaration that Herndon made material misrepresentations of fact in his application for insurance and presentation of his claim, and that the subject property was not a "residence premises" as defined by the policy. Auto-Owners now moves for summary judgment on Herndon's claims and its counterclaim.

## II. FACTS

Herndon purchased a home at 102 Cove Court in Kill Devil Hills, North Carolina ("the Cove Court house" or "Cove Court property") in the late spring/early summer of 2006. In connection with this purchase, on or about May 30, 2006, he submitted a signed application for insurance to Auto-Owners through its insurance agent, Southern Insurance Agency, Inc. *See* Bagwell Aff. [DE-15], Ex. A ("the Application"). In the Application, Herndon represented that the Cove Court house would be his primary residence, and that only one family would reside there. The application also indicated that the Cove Court house would not be rented, and that it was not undergoing renovation or reconstruction. Based on the Application, Auto-Owners issued the a homeowners insurance policy to Herndon. Answer and Counterclaim [DE-5], Ex. A ("the Policy").

A fire severely damaged the home on August 19, 2006, less than three months after Herndon purchased it. Herndon submitted a claim, which Auto-Owners acknowledged in an October 16, 2006, letter. Notice of Removal [DE-1], Compl. Ex. A. **Auto-Owners also advised that the fire was** intentionally set, and that it would proceed to investigate his claim. *Id.*

During the investigation of the claim, Auto-Owners conducted examinations under oath ("EUO") in December 2006 of Herndon, his mother Cynthia Riddle ("Cynthia"), and his uncle Jerome Riddle ("Rome"). Rome, the brother of Herndon's father, now is married to Cynthia.

During the EUOs, Herndon testified that he had been in an on-again, off-again relationship with his girlfriend, Cori, for the previous four years. During this time period, Herndon stayed at Cori's house often–if not full-time at one point–but also rented his own residence. He eventually decided to purchase the Cove Court property because of continuing relationship problems with Cori and because the house "was a good deal." Mem. in Support of Mot. for Summ. J. [DE-17], Herndon EUO at p. 23. Herndon

2

testified that he paid the mortgage and utilities for the Cove Court property, and did not contribute to rent or utilities at Cori's house. Herndon also testified he kept his belongings in a bedroom at the Cove Court property. *Id.* at pp. 22-23 ("All my stuff was at the very back end across from the master."). According to Herndon, he stayed at the Cove Court house, on average, two to three times per week. Cynthia testified that Herndon "sometimes" stayed at the Cove Court house, but he was always over at Cori's house. Mem. in Support of Mot. for Summ. J. [DE-17], Cynthia EUO at p. 10. In the year preceding his purchase of the Cove Court property, and after his purchase, Herndon received his mail at a post office box.

Herndon entered into a rental agreement, signed on July 1, 2006, with Cynthia and Rome. The couple rented the master bedroom of the Cove Court house for $750 per month. According to Herndon, he was a "mentor" to his mother and Rome as they dealt with various mental disorders. Rome and Cindy's rent was paid directly to Herndon by the trustee who administered a trust fund established by Herndon's great-grandfather.

Herndon also testified that he agreed to rent another bedroom to John O'Grady, a local construction worker, for $500 a month. When construction work became slow, Herndon agreed to let O'Grady do work around the house to work off the rent. After living at the Cove Court house for three weeks, however, O'Grady realized he could not make the payments or complete the needed work, and left. Cynthia and Rome both testified that others rented rooms as well, but Herndon denies this.

After purchasing the Cove Court property, Herndon made improvements to the home. He testified that he spent approximately $12,000.00 on repairing the deck, painting, fixing a "few electrical lights that didn't work," putting new doors on bedrooms, installing three ceiling fans and two new toilets, and putting in bathroom flooring. Herndon EUO at pp. 25-28.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden initially of coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue does indeed exist. *See Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish any one of the essential elements of the party's claim on which he will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322-23.

## IV. DISCUSSION

Auto-Owners moves for summary judgment on both Herndon's claims for breach of contract and unfair and deceptive trade practices,[1] and also moves for summary judgment on its counterclaim for declaratory relief that it owes no further obligation to Herndon under the policy arising from the fire on August 19, 2006. Specifically, Auto-Owners argues that there is no genuine issue of material fact that Herndon made knowing, material misrepresentations of fact on the Application for insurance, which makes the policy void *ab initio*. Auto-Owners also contends that Herndon did not reside at the Cove Court property, and thus it was not covered under the Policy.

---

[1] Herndon failed to respond to Auto-Owners' arguments regarding unfair and deceptive trade practices, and therefore the court deems this claim to be abandoned. *See Brand v. North Carolina Dept. of Crime Control and Public Safety*, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004)(noting that where a plaintiff fails to respond to a defendant's arguments regarding a claim, plaintiff concedes he has not stated a claim). Consequently, Auto-Owners' motion for summary judgment is ALLOWED as to the unfair and deceptive trade practices claim.

Auto-Insurance contends that Herndon made material misrepresentations on the Application regarding: (1) how many families were to reside in the home; (2) whether the home was his primary residence; (3) whether "the dwelling was ever rented;" and (4) whether the home was undergoing renovations or reconstruction. In North Carolina, "[i]t is a basic principle of insurance law that the insurer may avoid his obligation under the insurance contract by a showing that the insured made representations in his application that were *material* and *false*." Pittman v. First Protection Life Ins. Co., 72 N.C. App. 428, 433, 325 S.E.2d 287, 291 (1985)(citing Tolbert v. Mut. Benefit Life Ins. Co., 236 N.C. 416, 72 S.E.2d 915 (1952) and Willetts v. Integon Ins. Co., 45 N.C. App. 424, 263 S.E.2d 300 (1980))(emphasis in original).[2] To prevail on the affirmative defense of misrepresentation, "the insurance company must prove the insured made statements that were 1) false, 2) material, and 3) knowingly and willfully made." Bryan v. Nationwide Mut. Fire Ins. Co., 313 N.C. 362, 370, 329 S.E.2d 333, 338 (1985)(citing Watkins v. Continental Ins. Cos., 690 F.2d 449, 451 (5th Cir. 1982)). Consequently, to the extent that Auto-Owners' motion for summary judgment is based on Herndon's alleged misrepresentations, it has to show there is no genuine issue of material fact as to the falsity, materiality, or willfulness of Herndon's statements on the application.

---

[2] The court has diversity jurisdiction over this case, and the court will apply North Carolina law because Auto-Owners issued the insurance policy to Herndon in North Carolina and it covered property located in North Carolina. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941) (holding that a federal court sitting in a diversity jurisdiction case must apply the choice-of-law principles of the state in which the federal court is located); Fortune Ins. Co. v. Owens, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000) ("With insurance contracts the principle of *lex loci contractus* mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract.").

### 1. Primary occupancy

Auto-Owners first argues that Herndon made a false and material representation when he selected "Primary" in the "Occupancy" section of the Application. According to Auto-Owners, the facts establish that Herndon's "primary residence" was with his girlfriend, and therefore the Cove Court house was not primarily occupied by Herndon.

The meaning of "primary occupancy" is essential in determining whether, as a matter of law, Herndon's statement on the Application was false. It is notable to the court that neither party discusses the meaning of "primary occupancy" or "primary residence" within the meaning of the Policy–other than to note that the Policy defines "Residence premises" as "[t]he one family dwelling where you reside." Ans. to Compl [DE-X], Ex. A (The Policy) at pp. 2-3 of 30. Neither "reside" nor "primary" are defined in the Policy.

With regard to "reside," perhaps this is because the word, although commonly used, has "no precise, technical, and fixed meaning applicable to all cases." *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 266 N.C. 420, 435, 146 S.E.2d 410, 414 (1966). Indeed, the North Carolina Supreme Court has described the word "resident" in an insurance contract to be a "slippery word." *Id.* at 437, 146 S.E.2d at 416. The "slippery" nature of the relevant terms necessarily means that whether a home is one's "primary residence" is an intensive fact-driven inquiry and one in which an insured's intent will be center stage.

Based on the record before the court, and given the slippery nature of the relevant terms, the court cannot conclude, as a matter of law, that the Cove Court house was *not* primarily occupied by Herndon. The fact that Herndon chose to spend several nights a week with his girlfriend, and maintained a post office box, does not make the Cove Court house his "secondary" residence, as a matter of law. Because

of the fact-driven nature of the inquiry, whether Herndon made a false representation as to the "occupancy" of the Cove Court house must be decided by the jury. Auto-Owners' motion for summary judgment is DENIED to the extent it is based on the occupancy of the property

## 2. Number of families

Auto-Owners also argues that Herndon made a false and material representation when he stated just one family would be living at the Cove Court house. Specifically, Auto-Owners contends that because Herndon rented the master bedroom to his mother and uncle/stepfather, and because he rented the third bedroom to O'Grady for three weeks, more than one family lived in the dwelling.

Again, Auto-Owners does not discuss the meaning of the word "family" in the context of the Policy. It is well-settled in North Carolina that when interpreting an insurance contract, the court must resolve any ambiguity as to the terms of the policy or the effects of its provisions against the insurance company and in favor of the policyholder. *See C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.*, 326 N.C. 133, 142, 388 S.E.2d 557, 563 (1990). The North Carolina Supreme Court has explained that

> [a]n ambiguity exists in a contract when either the meaning of the words or the effect of its provisions is uncertain or capable of several reasonable interpretations. An ambiguity can exist when, even though the words themselves appear clear, the specific facts of the case create more than one reasonable interpretation of the contractual provisions. In interpreting the language of an insurance policy, courts must examine the policy from the point of a reasonable insured.

*Register v. White*, 358 N.C. 691, 695, 599 S.E.2d 549, 553 (2004).

Here, Auto-Owners asserts that the renting of a bedroom to Cynthia and Rome Riddle, Herndon's mother and stepfather, means that more than one family resided in the home. The court, however, would be hard-pressed to pronounce that renting a bedroom to one's mother and stepfather means, as a matter

of law, that more than one "family" resides in a dwelling.[3] In the court's view, no reasonable insured would consider their mother and stepfather to constitute a separate family within the meaning of the policy.

Auto-Owners does not rest its multiple-family argument solely upon the presence of Cynthia and Rome. Rather, Auto-Owners says the renting of a bedroom for three weeks to O'Grady also means more than one family was present in the Cove Court home. Again, the court notes that Auto-Owners does not address the meaning of "family" within the context of the Policy, or provide any reasoning as to why one could not take on a roommate and still be a "one family" home within the meaning of the Policy. Even if Auto-Owner's interpretation of the number of families within the home is correct, it does not answer the question as to whether Herndon made a false representation on the Application. Nothing in the record indicates that Herndon intended to rent a room to O'Grady at the time he completed the Application. *Cf. Pittman*, 72 N.C. App. at 429-33, 325 S.E.2d at 287-91(explaining there was "no question" that representation on insurance application was false where application required applicant to provide information regarding medical treatment within the preceding twelve months for any disease of the heart, and applicant provided no information even though he had just suffered a heart attack). Moreover, Auto-Owners has not identified whether Herndon had a continuing duty to update the company on the representations within the Application. Based on the record, the court cannot conclude, as a matter of law, that Herndon made a representation on the Application that was false *at the time*. This is an issue for the jury, and to the extent the motion for summary judgment is based on the representation of the number of families, it is DENIED.

---

[3] Indeed, the Policy defines "Insured" to mean: "You and the residents of your household who are . . . [y]our relatives." Ans. to Compl [DE-8], Ex. A (The Policy) at p. 2 of 30

### 3. Rental of dwelling

Auto-Owners contends Herndon made a false and material representation when he answered "no" to the question "Is the dwelling ever rented?" on the Application. Again, Auto-Owners offers no discussion as to the meaning of the question within the context of the Policy, other than its blanket assertion that Herndon lied when answering the question on the Application.

The court is again confronted with a situation where the specific facts of the case create more than one interpretation of the language. *See Register*, 358 N.C. at 695, 599 S.E.2d at 553 ("An ambiguity can exist when, even though the words themselves appear clear, the specific facts of the case create more than one reasonable interpretation of the contractual provisions."). Auto-Owners implicitly argues that if a homeowner takes on a roommate or a boarder who pays rent, then the dwelling must be considered "rented." The court, however, must view language from the viewpoint of a reasonable insured. *Id.* A reasonable insured would not view taking on a roommate or boarder as converting his or her residence[4] to a "rented" dwelling. Consequently, to the extent that Auto-Owners' motion for summary judgment is based upon Herndon's answer to the "Is the dwelling ever rented?" question, the motion is DENIED.

### 4. Renovations

Auto-Owners also argues that Herndon made a false and material representation when he answered "No" to the question "Is building undergoing renovation or reconstruction?" The record reveals, however, that Herndon expended approximately $12,000 on repairs that many homeowners undertake when purchasing a home, including: repairing the deck, painting, fixing a "few electrical lights

---

[4] As the court already has noted, there are outstanding issues of fact surrounding whether the Cove Court house was Herndon's primary residence.

that didn't work," putting new doors on bedrooms, installing three ceiling fans and two new toilets, and putting in bathroom flooring. *See* Herndon EUO at pp. 25-28. The court cannot conclude that a reasonable insured would view such routine improvements as constituting "renovation" or "reconstruction." Accordingly, to the extent that Auto-Owners relies on Herndon's answer to the renovation or reconstruction question, the motion for summary judgment is DENIED

### 5. "Residence Premises"

Finally, Auto-Owners argues that it is entitled to summary judgment because Herndon did not "reside" at the Cove Court property, and therefore the property is not covered under the Policy.

The Policy states that Auto-Owners covers "[t]he dwelling on the 'residence premises' shown in the Declarations, including structures attached to the dwelling." Ans. to Compl [DE-8], Ex. A (The Policy) at p. 3 of 30. "Residence premises" is defined as:

> a. The one family dwelling where you reside;
>
> b. The two, three, or four family dwelling where you reside in at least one of the family unites; or
>
> c. that part of any other building where you reside;
>
> and which is shown as the "residence premises" in the Declarations.

Ans. to Compl [DE-8], Ex. A (The Policy) at p. 3 of 30. As this court already has discussed, "reside" is not defined in the Policy. The court already has determined that genuine issues of material fact preclude judgment as a matter of law as to whether the Cove Court property was primarily occupied by Herndon; the same issues of fact preclude judgment as to whether Herndon was residing at the property. Consequently, to the extent that Auto-Owners' motion is based on its assertion that Herndon did not reside on the property, the motion is DENIED.

## V. CONCLUSION

For the foregoing reasons, Auto-Owner's motion for summary judgment [DE-16] is ALLOWED as to the unfair and deceptive trade practices claim, and is DENIED in all other respects. The Clerk of Court is DIRECTED to schedule and notice this matter for trial on the undersigned's October 5, 2009, term of court. The Clerk of Court is DIRECTED to schedule and notice the pretrial conference accordingly.

SO ORDERED. This the 18th day of February, 2009.

James C. Fox
Senior United States District Judge