UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:08-CV-1-F

| HERNDON HUNT OUTLAW RIDDLE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| AUTO-OWNERS INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

This matter is before the court on the Plaintiff's Rule 59(e) Motion to Reconsider/Amend Judgment [DE-33]. Defendant has responded, and this motion is now ripe for disposition. For the reasons set forth below, the court denies the motion. The court finds that summary judgment in favor of Defendant with respect to Plaintiff's unfair and deceptive trade practices act claim was proper, and the court's prior ruling will stand.

## I. PROCEDURAL HISTORY

Plaintiff Herndon Hunt Outlaw Riddle ("Herndon") initiated this action by filing a Complaint in the General Court of Justice, Superior Court Division, Dare County, North Carolina on November 27, 2007. Herndon alleged claims for breach of contract and unfair deceptive trade practices arising out of Defendant Auto-Owners Insurance Company's ("Auto-Owners") denial of Herndon's claim for insurance proceeds under a homeowners insurance policy. Auto-Owners filed a Notice of Removal in this court on January 2, 2008. On February 6, 2008, Auto-Owners filed its Answer, and asserted a counterclaim for a declaration that Herndon made material misrepresentations of fact in his application for insurance and presentation of his claim, and that the subject property was not a "residence premises" as defined by the policy.

Auto-Owners moved for summary judgment on Herndon's claims and its counterclaim, and in an order filed February 18, 2009, the court denied Auto-Owners' motion as to Herndon's breach of contract claim and Auto-Owner's counterclaim. [DE-32]. The court, however, allowed Auto-Owners' motion as to Herndon's unfair and deceptive trade practices claim, reasoning that Herndon failed to respond to Auto-Owners' arguments regarding unfair and deceptive trade practices, and therefore he abandoned his claim.

Herndon now asks the court to "amend its February 18 judgment and deny the Defendant's motion for summary judgment on [his] unfair and deceptive trade practices claim."

## II. DISCUSSION

### A. Whether Reconsideration Should be Granted

#### 1. Proper Standard of Review

At the outset, the court will address the proper standard of review for the procedural posture of this case and the present motion. Herndon moves under Rule 59(e) of the Federal Rules of Civil Procedure to amend the court's "judgment." Auto-Owners opposes the motion on the grounds that Herndon has failed to satisfy any of the grounds enumerated in Rule 59(e). Both parties cite to cases discussing strict standards for allowing motions for reconsideration. However, the cases cited all focus on motions that were filed after entry of a final judgment. *See, e.g., Pacific Ins. Co. v. American Nat'l Fire Ins. Co.*, 148 F.3d 396 (4th Cir. 1998) (discussing the standard for considering a motion to alter or amend judgment under Rule 59(e) where motion was filed after entry of declaratory judgment). Rule 59(e) of the Federal Rules of Civil Procedure only becomes applicable after a final judgment has been entered in a case. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) (explaining that Rules 59(e) and 60(b) are only available

for relief from a final judgment). Here, no final judgment has been entered in this case, and Herndon is asking the court to reconsider what is, in effect, an interlocutory order.

Rule 54(b) of the Federal Rules of Civil Procedure provides, in pertinent part:

[A]ny order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, *and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.*

FED. R. CIV. P. 54(b) (emphasis added). Accordingly, the Fourth Circuit has noted that "[a]n interlocutory order is subject to reconsideration at any time prior to the entry of final judgment." *Fayetteville Investors*, 936 F.2d at 1469. Moreover, "[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of final judgments." *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). Thus, in the Fourth Circuit at least, a district court may seek guidance from the general principles developed under Rules 59(e) and 60(b), but is not bound by those Rules. *See Fayetteville Investors*, 936 F.2d at 1470 (citing *Gridley v. Cleveland Pneumatic Co.*, 127 F.R.D. 102 (M.D. Pa. 1989)).

### 2. Application of Standard of Review

In the memorandum in support of his Motion to Reconsider, Herndon posits the following:

The Complaint alleges conduct, evidenced by the correspondence sent to [Herndon] by the Defendant that is attached to the Complaint at Exhibits A and B, that is a per se unfair claims settlement practice in violation of N.C. Gen. Stat. § 58-63-15(11). This Conduct was also described in the Plaintiff's response to the Defendant's motion for summary judgment.

[Herndon] did not intend to abandon his claim for Unfair and Deceptive Trade Practices. The failure to brief the unfair and deceptive trade practices issues resulted from the fact that the undisputed conduct of the Defendant is a blatant violation of the Unfair Claim Settlement Practices Act. A violation of the Act is an unfair and deceptive trade practice as a matter of law. As a result, Riddle's attorneys

mistakenly believed that it was not necessary to discuss this conduct more extensively in brief.

> It would be manifestly unjust to allow the Defendant to prevail on this claim. The undisputed conduct of the Defendant is a clear violation of the unfair claim settlement act and a *per se* violation of N.C. Gen. Stat. § 75-1.1. The Defendant should not be allowed to prevail given their [sic] egregious, undisputed conduct.

Pl.'s Mem. in Support of Rule 59(e) Mot. to Reconsider/Amend J. [DE-34] at pp.2-3.

The court would not generally be inclined to exercise its discretion to amend its prior ruling when, as here, the Plaintiff's explanation for failing to respond falls a bit flat and the court is concerned that Plaintiff does not provide a full and complete picture of the governing law. However, the court will re-examine whether summary judgment should have been granted on Plaintiff's unfair and deceptive trade practices claim because the court has *sua sponte* become aware that it granted summary judgment on this claim without proper consideration under Rule 56 of the Federal Rules of Civil Procedure.

Rule 56 states in relevant part:

> If the opposing party does not so respond [to a summary judgment motion], summary judgment should, *if appropriate*, be entered against that party.

FED. R. CIV. P. 56 (e)(2) (emphasis added). This language "if appropriate" has been interpreted to require the court to examine the record as a whole to determine if summary judgment may be entered against the party who failed to respond to summary judgment. *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). The court mistakenly granted summary judgment to Auto-Owners on this claim by deeming Herndon to have abandoned this claim, in contravention of Rule 56(e)(2). Accordingly, the court will exercise its discretion under Rule 54(b) to determine if summary judgment for Defendant as to Plaintiff's unfair and deceptive trade practices act claim is appropriate in order to satisfy Rule 56(e)(2).

## B. Summary Judgment Standard

It is well established that a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In analyzing whether there is a genuine issue of material fact, all facts and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996).

The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991) ( "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."). If the movant meets his burden, then the non-moving party must provide the court with specific facts demonstrating a genuine issue for trial in order to survive summary judgment. *Celotex*, 477 U.S. at 323.

When a party has failed to respond to a summary judgment motion, the court can grant summary judgment only "if appropriate." FED. R. CIV. P. 56(e)(2). To determine if it is appropriate, the district court must review the record to determine whether the movant is entitled to summary judgment. *Custer*, 12 F.3d at 416 ("Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the

moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'").

## C. Analysis of the Unfair and Deceptive Trade Practices Act Claim

Because Defendant's summary judgment memorandum had a brief, slightly off-the-mark argument[1] on this claim, and because Plaintiff failed to address the issue in its response and only made a terse, slightly off-the-mark argument in its motion for reconsideration,[2] the court will clarify matters (and satisfy its obligation under Rule 56(e)(2)) by simply reviewing the material facts and the record as a whole, examining the controlling law, and then making a finding if Defendant is entitled to "a judgment as a matter of law." For the reasons set forth herein, the court concludes that Defendant is entitled to summary judgment on Plaintiff's unfair and deceptive trade practices act claim.

### 1. Facts

---

[1] Auto-Owners argued that Herndon has a complete failure of proof of a "substantial aggravating factor" relative to Auto-Owners' alleged breach of contract. Surely, as the caselaw cited by Auto-Owners indicates, in order to establish an unfair or deceptive act for conduct that is a breach of contract, the plaintiff must also allege and prove "substantial aggravating circumstances" relative to the breach of contract. *Burrell v. Sparkkles Reconstr. Co.*, 657 S.E.2d 712, 717 (N.C. Ct. App. 2008). However, as discussed herein, Herndon attempts to establish the conduct element *as a matter of law,* which can only be done by alleging a violation of Section (f) of the unfair claim settlement practices act. *See* N.C. Gen. Stat. § 58-63-15(11)(f). Thus, Herndon would not need to prove the "substantial aggravating circumstances."

[2] Herndon relies on establishing Defendant's conduct was an unfair and deceptive trade practice as a matter of law, presumably because it violates Section (f) of the unfair claims settlement practices act (see discussion on controlling law, herein). *See* N.C. Gen. Stat. § 58-63-15(11)(f). However, the court finds Section (f) inapplicable upon these undisputed facts because liability was not "reasonably clear." Rather, coverage was in dispute because the fire department had concluded the fire was intentionally set, and Herndon's relative Jerome was the suspect. A loss caused by intentional acts done by a relative member of the household (an "insured" under the contract") would not be covered. *See* Compl., Ex. A, Oct. 16, 2006 Letter [DE-1 at p.13-15]. Thus, Section (f), which Herndon must be relying upon to state an unfair and deceptive trade practice as a matter of law, cannot apply.

Herndon bought a house in 2006 at 102 Cove Court, Kill Devils Hills, North Carolina. He submitted a signed application for homeowner's insurance to Auto-Owners through an agent, Southern Insurance Agent, Inc. In that Application, Herndon represented that this would be his primary residence, that the house would not be rented, and that it was not undergoing renovation or reconstruction. Auto-Owners issued the insurance policy. On August 16, 2006, a fire severely damaged the house. The fire department's report concluded the fire was intentionally set and named Jerome Riddle as the suspect. Jerome is both an uncle and a stepfather to Herndon (he is his father's brother and also is married to his mother). Herndon made a claim for the loss on his homeowner's insurance policy. It is undisputed that, after seeing the local fire department's report, Auto-Owners sent Herndon a letter which is in the record. In this October 16, 2006 letter, attached as Exhibit A to the Complaint, Auto-Owners states the fire department's conclusions, cites to policy provisions regarding the intentional loss exclusion and definition of an "insured," and puts Herndon on notice that Auto-Owners is investigating the claim "since there are possible coverage questions." Specifically, the letter states one provision of the exclusion as reading: "In the event of such [intentional] loss, no 'insured' is entitled to coverage, *even 'insureds' who did not commit or conspire to commit the act causing the loss.*" Compl., Ex. A, Oct. 16, 2006 Letter (emphasis added) [DE-1 at p.14]. The October letter also states, "It is our understanding that Jerome Riddle, your uncle, is a suspect and according to the above policy language he is an insured as defined by the policy." Compl., Ex. A, Oct. 16, 2006 Letter [DE-1 at pp. 13-15].

It is undisputed that Auto-Owners took examinations under oath (EUO) of Herndon, his mother Cynthia ("Cindy") Riddle, and his uncle and stepfather, Jerome (or "Rome") Riddle in December of 2006. The full transcripts of these EUO's are in the record. [DE-17]. Herndon's

counsel was present for these examinations. The examiner questioned all three persons extensively about the events leading up to the fire, during, and shortly after the fire, specifically asking if Rome set the fire because he was angry that Herndon had asked him and Cindy to leave the house the day before the fire. Rome denied setting the fire, but admitted to extremely odd behavior the day before. He had pulled things out of the storage shed, into the yard, and "in a rage" he "tore it up." Mem. in Support of Mot. for Summ. J. [DE-17], Jerome EUO at p.17. The examiner also asked all three persons about where Herndon lived. Herndon said he had been splitting his time between his on-again, off-again girlfriend's (Cori's) house, while he also rented the house at Cove Court and stayed there at times. He eventually bought the Cove Court house, where he kept a room with all his belongings, and where he testified he stayed about two to three times a week. His mother testified Herndon was "sometimes" at the Cove Court house but always at Cori's. The examiner also asked about Cindy and Rome's living arrangement at Cove Court. They testified they paid rent to Herndon for the master bedroom, pursuant to a lease, of $750 a month from funds received from a trust account for Rome's. The written lease is in the record as an exhibit to an EUO. Rome also testified a bit about how he suffered from a mental disorder. Herndon also rented another bedroom to at least one man, although he did not stay long. Cindy and Rome testified other men rented rooms, too. The examiner also asked about Herndon's improvements to the house after he bought it.

It is further undisputed that Auto-Owners denied the claim only in part for the intentional loss exclusion, but more notably for another reason–misrepresentation of fact on the application–as set forth in the April 23, 2007 denial letter. This letter is in the record as Exhibit B to the Complaint. The letter actually sets forth seven reasons for denial:

(1) Herndon made material misrepresentations of fact on the subject Application for Insurance. These misrepresentations include, but may not be limited to: false statements concerning the occupancy of the dwelling; number of families for the dwelling; rental of the dwelling; and renovation or reconstruction of the dwelling.

(2) Herndon Riddle made material misrepresentations of fact in the presentation of his claim, concerning his occupancy and rental of the dwelling.

(3) The subject dwelling was not a "residence premises" as required by the policy.

(4) Herndon Riddle failed to timely comply with his duties after loss, including but not limited to: failing to timely provide inventories, repair estimates and other documents to support his claim.

(5) Upon information and belief, this fire was incendiary, not accidental, and more likely than not, Jerome Riddle participated either directly of [sic] indirectly in causing the fire.

(6) Jerome Riddle has not produced adequate documentation and claim for any personal property alleged to have been damaged or destroyed by the fire.

(7) Cindy Riddle has failed to produce sufficient documentation of any claims for personal contents or documentation of any other claim pursuant to the policy of insurance. To the extent Cindy Riddle does provide proper documentation for such loss, Auto-Owners will review the documentation for coverage under the subject policy. (However, as stated above, Auto-Owners contends that this policy was void from its inception due to the misrepresentations of Herndon Riddle on the Application for Insurance.)

Compl., Ex. B, April 23, 2007 Letter at pp.1-2 [DE-1 at pp.16-17]. The letter then purports to state applicable policy provisions, including the intentional loss exclusion. Part of this exclusion is stated as reading, "This exclusion only applies to an 'insured' who commit or conspires to commit an act with the intent to cause a loss." Compl., Ex. B, April 23, 2007 Letter at p.5 [DE-1 at p.20].

2. **Controlling Law**

North Carolina General Statute Section 75-1.1(a) of the unfair and deceptive trade practices act (UTDPA) provides: "Unfair methods of competition in or affecting commerce, and

unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." To establish a violation of Section 75-1.1 of the UDTPA, a plaintiff must show three elements: (1) an unfair or deceptive trade practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs. *Gray v. North Carolina Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). "The determination of whether an act or practice is an unfair or deceptive practice that violates [Section] 75-1.1 is a question of law for the court." *Id.*

The North Carolina Supreme Court has said:

> [A] practice is deceptive if it has the tendency to deceive. This Court has also observed that a practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Good faith is not a defense to an alleged violation of [the UDTPA]. Moreover, where a party engages in conduct manifesting an inequitable assertion of power or position, such conduct constitutes an unfair act or practice.

*Gray*, 352 N.C. at 68, 529 S.E.2d at 681 (citations and internal quotation marks omitted).

Moreover, as the court understands North Carolina law, a violation of any prohibited act in an insurance statute, the unfair claim settlement practices statute (North Carolina General Statute Section 58-63-15(11)), *may* constitute a violation of the UDTPA, if it rises to the level of an unfair and deceptive practice under the UDTPA. *Id.* at 71, 529 S.E.2d at 683 (indicating its agreement "with the practice of looking to [Section] 58-63-15(11) for examples of conduct to support a finding of unfair or deceptive acts or practices); *Country Club of Johnston County, Inc. v. United States Fidelity and Guaranty Co.*, 150 N.C. App. 231, 246, 563 S.E.2d 269, 279 (N.C. Ct. App. 2002) ("It follows that the other prohibited acts listed in [Section] 58-63-15(11) are also acts which are unfair, unscrupulous, and injurious to consumers, and that such acts therefore fall within the 'broader standards' of [the UDTPA]." Also, a violation of one provision in particular,

Section 58-63-15(11)(f), which prohibits insurance companies from "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" constitutes a violation of UDTPA as *a matter of law*. *Gray* 352 N.C. at 71, 529 S.E.2d at 68. Herndon must be relying on Section (f) to state a UDTPA violation as a matter of law, but the court finds Section (f) does not apply because liability for the loss was unclear given that Jerome was suspected of setting the fire.

Thus, without Section (f) applicable, the court must determine if the record establishes Defendant's conduct was independently an unfair and deceptive trade practice per the UDTPA or a violation of the insurance statute that rose to the level of an unfair and deceptive trade practice. The court finds nothing in the record to establish that Auto-Owners committed an unfair and deceptive act within the meaning of the UDTPA. In fact, the court finds that the insurance company acted reasonably to investigate a highly unusual and suspicious claim. The fire department found the homeowner's uncle was the prime suspect in setting the fire. Because the policy excluded losses from intentional acts done by the named insured or other insureds (which included relatives living at the house), it was perfectly reasonable for the insurance company to take statements from the homeowner and his mother and uncle/stepfather that lived at the house. The scenario only got more bizarre when the insurance company took these statements. It became clear that Herndon spent very little time at the house, that the relatives paid rent, that at least one more person and maybe even more people rented a room at the house from time to time, that Jerome was mentally unstable, and that the situation at the house before the fire was emotionally volatile. Certainly, the insurance company, having issued a homeowners policy to Herndon as the primary resident would have been alarmed at the facts that came to light. Indeed,

the court finds it was reasonable for the insurance company to conclude that Herndon had made material misrepresentations on his policy application and to thus deny the claim.[3] It seems also reasonable that a secondary reason to deny was because Jerome in all probability started the fire. The court finds nothing in the record to establish that the investigation was a guise to find other reasons to deny the claim. The insurance company was entitled to investigate a disputed claim, and other information came to light during the investigation that supported another ground for denial.

The only potential issue the court finds in the record (and which Herndon seems to focus on in his allegations) is that the October 16, 2006 letter misstates a policy provision. At issue is the October 16 letter quotes a policy provision as reading, "In the event of such [intentional] loss, no 'insured' is entitled to coverage, even 'insureds' who did not commit or conspire to commit the act causing the loss." But the April 23, 2007 denial letter quoted this provision as reading, "This exclusion only applies to an 'insured' who commits or conspires to commit an act with the intent to cause a loss." While it seems be a misstatement of a policy provision, the court finds that in context the misstatement is not unfair or deceptive.[4] If read in context, the statement is actually true: the *named* "insured" on a policy would not be entitled to coverage– even if he did not do anything to cause the loss–if *another* "insured" by policy definition (such as a resident relative, ie. Jerome) committed an intentional act causing the loss. That is exactly the situation

---

[3] However, as noted in the court's previous order, the court cannot say Herndon made material misrepresentations of fact as a matter of law.

[4] A policy misrepresentation is a violation of Section (a) of the insurance regulation, but North Carolina courts have not found it to be an UDTPA as a matter of law. N.C. Gen. Stat. § 58-63-15(11)(a). Thus, the court must determine if as a matter of law the misstatement rises to the level of being unfair and deceptive under the UDTPA.

suspected when Auto-Owners wrote this letter to Herndon. Perhaps that is what the letter was trying to emphasize by restating that policy provision in slightly different words. In any event, the court finds any misstatement to be immaterial because the first and apparently primary reason for denial of coverage was Herndon's misrepresentations on the policy application which the insurance company found to void the policy. Thus, any confusion created over the intentional loss provision misstatement was not material to the outcome.

Accordingly, the court concludes after reviewing the record as required by Rule 56(e)(2) of the Federal Rules of Civil Procedure that summary judgment for Auto-Owners is appropriate on Herndon's unfair and deceptive trade practice claim. The court's prior order [DE-32] granting summary judgment to Auto-Owners on this claim will stand for the reasons set forth herein, and not for the reason stated in the prior order.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to reconsider/amend judgment [DE-33] is DENIED.

SO ORDERED. This the 17 day of July, 2009.

James C. Fox
Senior United States District Judge